# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

GREEN AUTOMOTIVE, LP, )
an Oklahoma Limited Partnership; )
and MILO GORDON, INC., )
an Oklahoma Corporation, )
                                   )
                 **Plaintiffs,**    )
                                   )
v.                                     )    Case No. CIV-18-28-R
                                   )
ATN MANGEMENT CO, LLC, )
A Nevada Limited Liability Company, )
                                   )
                 **Defendant.**    )

## ORDER

Before the Court is the Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 31) to which Defendant filed a response in opposition {Doc. No. 34). Having considered the parties' submissions, the Court finds as follows.

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition

of the claim' or defense." *Id*. (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

This case arises from a business relationship gone bad. Plaintiffs are both engaged in the business of buying and selling new and used automobiles; both offer service and body shop work as well. In 2014, on behalf of Milo Gordon, Todd Wyatt entered into an engagement letter with Mark Gilbert, on behalf of ATN. ATN, a consultant, was to provide its services to Milo Gordon in exchange for compensation.[1] In June 2016, Milo Gordon notified Mark Gilbert of its desire to terminate the agreement. Plaintiffs allege that although the parties never executed a security agreement, on July 12, 2016, Defendant filed a UCC-1 financing statement with the Oklahoma County Clerk's Office asserting a security interest in the assets of Green Automotive, LP for "All Assets of the Debtor. Maximum Indebtedness not to exceed $460,000." A substantively identical UCC Financing Statement was filed as to Milo Gordon, Inc. Plaintiffs contend Defendant was not authorized to file these financing statements, having never been granted a security interest in their assets. Plaintiffs further contend that even if the language upon which Defendant relies were to apply, it is not sufficient to describe the assets subject to any security agreement, and therefore, the financing statements were improperly filed. Plaintiffs ask the Court to declare ATN's UCC lien invalid because Defendant lacked an authenticated security agreement when it recorded the lien.

---

[1] The parties dispute the terms of the agreement. Defendant contends that the agreement is commemorated in an October 2, 2014 letter agreement with additional terms attached thereto. Plaintiff contends that the single-page October 2, 2014 letter agreement is the only written contract between the parties and that Defendant appended the additional pages containing terms to which Plaintiffs did not accede. Included in these terms is language that Defendant purports permitted it to file the financing statement at the heart of Plaintiffs' case. Defendant has a counterclaim for breach of contract. It contends it was not paid for certain of the consulting work it performed.

2

In response, Defendant contends there is a genuine issue of material fact regarding the terms of its agreement with Plaintiff, because there is an issue of fact as to which agreement controls. Defendant also contends the dispute as to the improperly filed financing statement is moot, because it voluntarily terminated the UCC filing on August 10, 2018.[2] The Court ordered Plaintiffs to file a reply in support of their motion. Therein Plaintiffs argue the case is not moot and further address the merits of their motion.

The Court first addresses whether Defendant's unilateral decision to terminate the UCC filing renders Plaintiffs' request for declaratory relief moot, because the question presented was the propriety of the filing. Voluntary cessation, such as here, may moot a claim if (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim events have completely and irrevocably eradicated the effects of the alleged violation. *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1115 (10th Cir. 2010). The doctrine does not apply if the party who voluntarily ceased an illegal practice remains free to resume the practice. *See Ind. v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213-14 (10th Cir. 2015). The burden falls upon Defendant to persuade the Court that the challenged conduct cannot reasonably be expected to start up again. *Rio Grande Silvery Minnow,* 601 F.3d at 1116. Defendant proffers no explanation in support of its burden to establish that the controversy regarding the UCC liens is moot. Defendant states "ATN's release of the UCC-1 liens was merely done to simplify the issues raised in [the] case." (Doc. No. 34, p. 8). Defendant does not attempt to

---

[2] The financing statement was terminated four days prior to the filing of Defendant's response.

reassure the Court that it will not attempt to re-encumber Plaintiffs' assets. Accordingly, the Court declines to dismiss on the grounds of mootness Plaintiffs' request for declaratory judgment regarding the validity of the UCC-1 lien.

Plaintiffs argue they are entitled to declaratory judgment regarding the propriety of the financing statements filed by Defendant, who lacked authorization to make such filing. A person may file a UCC-1 financing statement if the "debtor authorizes the filing in an authenticated record" or the debtor authenticates or becomes bound by a security agreement. Okla. Stat. tit. 12A § 1-9-509(a)(1), (b). Plaintiffs contend they neither authorized such filing nor executed a security agreement. Defendant contends there is a security agreement as part of the October 2, 2014 Letter Agreement.

> 22. In the event the Customer fails to pay as agreed or delays payments due beyond the agreed upon time frame, the Consultant shall provide written notice and a 10 day Notice will be provided to cure or bring current and such Default (sic). Thereafter, the Consultant will retain the rights to file a UCC claim on the Customer's assets related to the businesses.

Doc. No. 34-2, p. 14. Defendant asserts that because there are genuine issues of material fact regarding the terms of the October 2, 2014 agreement, and specifically whether the above provision is part of the contract, that summary judgment is inappropriate. Plaintiffs argue otherwise, and the Court concurs, because even if the terms of paragraph 22 quoted above are part of the parties' agreement, the language is not sufficient to create an enforceable security interest.

Oklahoma Stat. tit. 12A § 1-9-203 provides for attachment and enforceability of a security interest.

> [A] security interest is enforceable against the debtor . . . with respect to the collateral only if
> (1) the value has been given;
> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
> (3) one of the following conditions is met:
>     (A) the debtor has authenticated a security agreement that provides a description of the collateral.

Plaintiffs contend the agreement fails in that it does not sufficiently describe the collateral, relying on the vague description of "Customers' assets related to the businesses."

Oklahoma Stat. tit. 12A § 1-9-108 governs the sufficiency of descriptions of collateral for creation of a security interest. Pursuant to § 1-9-108(a), "[e]xcept as otherwise provided in subsection[] (c) . . . of this section, a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." Subsection (c), one of the noted exceptions, indicates that "[a] description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral." Okla. Stat. tit. 12A § 1-9-108(c). Defendant's attempt to rely on the phrase "Customer's assets related to the businesses" is in violation of the restriction set forth in § 1-1-108(c). *In re Hintze,* 525 B.R. 780, 785 (N.D. Fla. 2015), assessed substantively identical provisions of Florida law:

> Under § 679.2013, an enforceable security interest is created *only if* all the elements are present, including an authenticated security agreement *with a description of the collateral.* If the description is explicitly insufficient under § 679.1081, it is axiomatic that the description cannot meet the requirements of § 679.2031. Because the Defendant does not have an authenticated security agreement with a description of the collateral that is enforceable under Florida's UCC, the third requirement of a security interest is missing. Because no security interest was created, the Defendant has no security interest to enforce.

*Id.* at 785-86. Plaintiffs are therefore entitled to partial summary judgment.[3]

For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

IT IS SO ORDERED this 13th day of September 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[3] Defendant's contention that the financing statement sufficiently described the collateral pursuant to Okla. Stat. tit. 12A § 1-9-504(2) is irrelevant. The security interest must exist before the lien can be filed, and the standard for description of collateral in a financing statement is not the same as the standard for description in a security agreement.